IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

| | |
|---|---|
| HARRY LAUGHLIN<br>5704 Old Temple Hill Road<br>Temple Hills, MD 20748<br><br>-and-<br><br>ELLEN LAUGHLIN<br>5704 Old Temple Hill Road<br>Temple Hills, MD 20748<br><br>Plaintiffs<br><br>v.<br><br>MULTI FUND OF COLUMBUS, INC.<br>6456 Havens Road<br>Backlick, OH 43004<br><br>Serve On:<br><br>Graham Montigny<br>6456 Havens Road<br>Blacklick, OH 43004<br><br>-and-<br><br>BRUCE GOODMAN<br>24371 Lorain Road, Ste 205<br>North Olmsted, OH 44070<br><br>-and-<br><br>GRAHAM MONTIGNY<br>6456 Havens Road<br>Blacklick, OH 43004<br><br>-and- | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. CAL09-38869<br>)<br>)<br>)<br>)<br>)<br>)  **FILED**<br>)<br>)  NOV 30 2009<br>)<br>)  CLERK OF THE CIRCUIT COURT<br>)  FOR PRINCE GEORGES COUNTY, MD<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

EXHIBIT A

```
DIRECT SETTLEMENT SERVICES      )
300 Penn Center Boulevard, Ste 303  )
Pittsburgh, PA 15235            )
                                )
Serve On:                       )
                                )
The Corporation Trust Incorporated )
300 E Lombard Street            )
Baltimore, MD 21202             )
                                )
        -and-                   )
                                )
EMC MORTGAGE                    )
800 State Highway 121 Bypass    )
Lewisville, TX 75067            )
                                )
Serve On:                       )
                                )
The Corporation Trust Incorporated )
300 E Lombard Street            )
Baltimore, MD 21202             )
                                )
            Defendants          )
```

FILED
NOV 30 2009
CLERK OF THE CIRCUIT COURT
FOR PRINCE GEORGES COUNTY, MD

## ~~THIRD PARTY~~ COMPLAINT

Plaintiffs Harry Laughlin and Ellen Laughlin file the following Complaint alleging claims of fraud, violations of Maryland's consumer protection laws, violations of Maryland's commercial code, and civil conspiracy against Defendants Multi Fund of Columbus, Inc., Graham Montigny, Bruce Goodman, EMC Mortgage, Aegis Wholesale, and Direct Settlement Services:

### PARTIES

1. Plaintiffs Harry Laughlin and Ellen Laughlin are owners of the property located at 5704 Old Temple Hill Road, Temple Hills, MD 20748 (the "Property").

2. Defendant Multi Fund of Columbus, Inc. ("Multi Fund") is a mortgage broker through which Plaintiffs obtained the current mortgage on the Property.

3. Defendant Graham Montigny is an individual who, at all times material to this Complaint, was a principal of Multi Fund.

4. Defendant Bruce Goodman is an individual who, at all times material to this Complaint, was an employee of Multi Fund.

5. Aegis Wholesale is a lender who financed the current mortgage held by Plaintiffs on the Property.

6. Direct Settlement Services is the company that handled the settlement of the loan underlying this case.

7. EMC is an lender that assumed the mortgage on the Property from Aegis.

8. Beginning in or about the Summer of 2006, Plaintiffs were contacted on numerous occasions by Defendant Goodman about refinancing the mortgage on their Property.

9. At the time, the Laughlins had a fixed rate mortgage with payments of principal and interest of approximately $1749.00

10. During these conversations, Defendant Goodman asserted to the Laughlins that he could put them into a mortgage that would reduce their payments from $1749 per month to approximately $1499 per month.

11. In response to this offer by Goodman, in early November 2006, the Laughlins applied for a mortgage with Multi Fund that Goodman represented would lower their payments to $1499 per month.

12. On information and belief, Defendant Montigny supervised Goodman and was aware of and approved all of Goodman's representations, misrepresentations, and non-disclosures to Plaintiffs.

13. The Good Faith Estimate prepared by Goodman, Multi Fund, and Montigny for Plaintiffs on November 7, 2009 indicates that the Plaintiffs were being placed in a mortgage with an interest rate of 3.75 percent for a term of 360 months, and that the Laughlins monthly payments, including principal, interest, insurance and taxes would be $1386.04.

14. Multi Fund was able to obtain funding for the loan on the Plaintiffs' property from Aegis Wholesale.

15. On November 29, 2006, the Plaintiffs went to closing on their loan with Aegis. The closing was handled by Direct Settlement Services.

16. According to the HUD-1 signed at closing, Multi Fund was paid a fee of $2325.00; however, Plaintiffs were never presented with a document that disclosed this fee prior to closing and never signed a document disclosing such a fee.

17. Without their knowledge or understanding and without any prior disclosure or explanation by Goodman, Multi Fund, Montigny, or Direct Settlement, the Laughlins were placed in a so-called option payment ARM. With this type of Note, during the "option period," Plaintiffs were given several payment options. The lowest payment option would be based on the 3.75 rate previously disclosed to Plaintiffs as the interest rate on their Note.

18. However, this 3.75 Rate was not the actual rate of the Note. This was just the interest on which the Plaintiffs' minimum payment under the Note was calculated.

19. Instead, the actual rate on the Note was 6.75 percent, and if the Plaintiffs made only the minimum payment every month, the additional 3 percent of interest that accrued each month would be added onto the Plaintiffs' Note.

20. This was never explained to Plaintiffs by anyone from Multi Fund, Aegis, or Direct Settlement Services.

21. Instead, Plaintiffs were presented with documents that mislead them into believing that the actual rate on their Note was 3.75 percent.

22. For instance, at closing, Plaintiffs were presented with a TILA statement prepared by Multi Fund, Goodman, and Montigny that stated that the first 51 payments under the Note would be $1096.62.

23. Further, the day after closing, Goodman faxed to Plaintiffs an amortization schedule showing an interest rate of 3.75 percent and monthly payments of principal and interest $1,096.00 from January 1, 2006 through January 1, 2011. On information and belief, this amortization schedule was approved by Montigny.

24. Sometime after closing, the Laughlins' Note was purchased by EMC. It should have been apparent from the closing documents that Plaintiffs had been fraudulently placed into the mortgage.

25. As per the Note, each month, Plaintiffs were provided with Billing Statements, first by Aegis and then by EMC, giving Plaintiffs four payment options. One of the payment options was denoted as a "Minimum Payment" of $1479.09 and a second payment option denoted as "Interest Only Payment" was $2304.11. Only the "Interest Only Payment" would cover all of the interest that accrued in a given month.

26. Nowhere on these Billing Statements is it made clear that if Plaintiffs only made the minimum payment, additional interest would be capitalized onto their Note.

27. After several months of making the minimum payments provided, Plaintiffs began to become concerned because the Billing Statements reflected that the principal on their mortgage was increasing.

28. They then contacted a mortgage broker who explained that by making the minimum payment, interest was being added on to their mortgage and that if they wanted to pay principal and interest, Plaintiffs would have to pay $2,304.11.

29. Because of the increase in their mortgage and the downturn in the real estate market, the Laughlins were unable to refinance their mortgage. Thus, to avoid any further increases in their principal, the Laughlins attempted for several months to pay the full $2,304.11.

30. As a result, the Laughlins spent much of their life savings.

## COUNT I
### (Fraud)

31. Paragraphs 1-30 are realleged and incorporated by reference herein.

32. Defendant Goodman purposely misrepresented to the Laughlins the type of mortgage that they would have, the interest they would be paying, and the payments that would have to be made to pay all interest that would accrue in any given month.

33. Defendant Goodman also failed to disclose to the Laughlins the fact that the 3.75 percent interest rate was not the full, actual rate under the Laughlins' note, and that if the Laughlins made the payments reflected on the GFE, the TILA statement, and the "minimum payment" reflected on any future billing statements, unpaid interest would be capitalized onto their mortgage.

34. As a result of these misrepresentations and nondisclosures of material facts, the Laughlins have been damaged.

35. These misrepresentations were made with the knowledge and/or at the direction of Defendant Montigny.

36. Defendants Goodman and Montigny knew that these statements to the Laughlins were false and expected the Laughlins to rely on the above-described misrepresentations and

nondisclosures of material facts, and the Laughlins did so rely in that they closed on the loan proposed by the Defendants.

37. At all times material to this Complaint, Goodman and Montigny were acting as agents of Multi Fund, making Multi Fund responsible for the resulting damage to the Laughlins.

38. Because Aegis ultimately funded the loan tainted by the fraudulent misrepresentations and nondisclosures of Defendants Goodman and Montigny, it is liable responsible for any resulting damage to the Laughlins.

39. Because EMC purchased the loan tainted by the fraudulent misrepresentations and nondisclosures of Defendants Goodman and Montigny, it is liable responsible for any resulting damage to the Laughlins.

WHEREFORE, Plaintiffs seek an award of damages against Defendants in an amount to be proven at trial but which is, at a minimum, $500,000 and punitive damages of $1,000,000.

## COUNT II
(Violations of Maryland's Consumer Protection Act)

40. Paragraphs 1-39 are realleged and incorporated by reference herein.

41. Maryland's Consumer Protection Act prohibits unfair and deceptive trade practices, which include failing to state material facts; making false, falsely disparaging, or misleading oral or written statements that have the capacity, tendency, or effect of misleading consumers; and knowingly concealing or omitting material facts with the intent that consumers rely on the same.

42. Defendant Goodman purposely misrepresented to the Laughlins the type of mortgage that they would have, the interest they would be paying, and the payments that would have to be made to pay all interest that would accrue in any given month.

43. Defendant Goodman also failed to disclose to the Laughlins the fact that the 3.75 percent interest rate was not the full, actual rate under the Laughlins' note and that if the Laughlins made the payments reflected on the GFE, the TILA statement, and the "minimum payment" reflected on any future billing statements, unpaid interest would be capitalized onto their mortgage.

44. As a result of these misrepresentations and nondisclosures of material facts, the Laughlins have been damaged.

45. These misrepresentations were made with the knowledge and/or at the direction of Defendant Montigny.

46. At all times material to this Complaint, Goodman and Montigny were acting as agents of Multi Fund, making Multi Fund responsible for the resulting damage to the Laughlins.

47. Because Aegis ultimately funded the loan tainted by the fraudulent misrepresentations and nondisclosures of Defendants Goodman and Montigny, it is liable responsible for any resulting damage to the Laughlins.

48. Because EMC purchased the loan tainted by the misrepresentations and nondisclosures of Defendants Goodman and Montigny, it is liable responsible for any resulting damage to the Laughlins.

WHEREFORE, Plaintiffs seek an award of damages against Defendants in an amount to be proven at trial but which is, at a minimum, $500,000 and punitive damages of $1,000,000, and attorneys' fees and costs.

## COUNT III
(Violations of Maryland Commercial Code, §12-805)

49. Paragraphs 1-48 are realleged and incorporated by reference herein.

50. Defendants Goodman and Montigny failed to disclose to the Laughlins the fee that would be paid to Multi Fund and failed to have Plaintiffs execute an agreement agreeing to such a fee prior to Multi Fund assisting Plaintiffs.

51. These failures are violations of Maryland Commercial Code, §12-805, and Germany has been damaged as a result of these violations.

52. At all times relevant, Goodman and Montigny were acting for and on behalf of Multi Fund, making Multi Fund responsible for the damages flowing from Goodman and Montigny's actions.

WHEREFORE, Plaintiffs seek an award of damages against Defendants Goodman and Montigny and Multi Fund in an amount to be proven at trial but which is, at a minimum, $15,000 and punitive damages of $100,000, and attorneys' fees and costs.

## COUNT IV
(Civil Conspiracy)

53. Paragraphs 1-52 are re-alleged, re-affirmed, and incorporated herein by reference.

54. Defendants Goodman and Montigny, and certain other John Does and/or Jane Does employed by Direct Settlement and Aegis Wholesale, acted in concert with the joint motive to fraudulently conceal that the actual rate on the Laughlin's mortgage was 6.75, not 3.75 and that by making the "minimum payments," the Laughlins would not be paying all interest that accrued that month and would have that difference capitalized onto their mortgage.

55. The acts that formed parts of this conspiracy include failing to disclose these material facts and creating documents that mislead the Laughlins.

56. At all times relevant to the allegations of this Complaint, the Defendants Goodman and Montigny were employees/agents acting within the scope of their employment/agency and for the benefit of Multi Fund. As such, Multi Fund is liable for all of the actions alleged herein by Defendants Goodman and Montigny.

57. Plaintiffs were damaged as a proximate result of this conspiracy.

Respectfully submitted,

Michael P. Coyle, Esq.
Richard I. Chaifetz, Esq.
CHAIFETZ & COYLE, PC
9881 Broken Land Parkway, Suite 300
Columbia, MD 21046
443-546-4608 (Tel.)
443-546-4621 (Fax)

Attorneys for Plaintiffs

DATED:    November 25, 2009